[No. 634.    August 28, 1895.]

# IN RE JAMES ADDISON PERALTAREAVIS, PETITIONER.

HABEAS CORPUS—PRESENTATION OF FRAUDULENT CLAIM AGAINST AND CONSPIRACY TO DEFRAUD THE UNITED STATES—COURT OF PRIVATE LAND CLAIMS—JURISDICTION.—By section 14, Act, March 3, 1891, the court of private land claims was created, and given express authority to render judgment against the United States for the value of the lands which the United States may have granted or sold belonging to the claimant, which judgment, it provides, ''when found shall be a charge on the treasury of the United States.'' By section 5438, Revised Statutes of United States, it is made unlawful for any person

to present for payment or approval, to any person or officer in the civil * * * service of United States, any claim against the United States, knowing such to be false, fictitious, or fraudulent * * * or who enters into any conspiracy to defraud the United States, by obtaining the payment of any fraudulent claim, etc. On petition for a writ of habeas corpus for the release of the petitioner from commitment, after a preliminary hearing on the charges of presenting to the court of private land claims a fraudulent claim against and conspiring with another to defraud the United States,—Held: The judge of the court of private land claims is an officer in the civil service of the United States, within the meaning of the statute, and the presentation of such claim to that court, of which he is the presiding officer, was a presentation to "an officer in the civil service of the United States." U. S. v. Strobach, 48 Fed. Rep. 908..

2. Where, as here, the committing court had jurisdiction of the offense charged, the proceedings upon which the prisoner was committed can not be collaterally attacked on habeas corpus.

PETITION for writ of habeas corpus. Writ denied; SMITH, C. J., and COLLIER, J., dissenting.

The facts are stated in the opinion of the court.

CATRON & SPIESS for petitioner.

J. B. H. HEMINGWAY and MATT G. REYNOLDS, United States attorneys, for court of private land claims.

BANTZ, J.—The prisoner was committed to jail, after a preliminary hearing and on the charge (1) of filing in the court of private land claims, a claim against the United States in the sum of $100,000, said claim being false, fictitious, and fraudulent, and known by him to be such at the time; and (2) that he entered into a conspiracy with one Sofia Treadway to defraud the government of the sum of $100,000, in respect to such claim. If the claim had been one for land simply, it is conceded that it would not have been an offense within section 5438, Revised Statutes, United States. The material part of that section is as follows: "Every person who makes or causes to be made, or presents or

causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent * * * or who enters into any agreement, combination or conspiracy, to defraud the government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, * * * every person so offending," etc.    Then follows the punishment.    The information contains two charges: First, presenting a fraudulent claim; and, second, conspiracy to defraud.

By section 14 of the Act of March 3, 1891, creating the court of private land claims, express authority was given that court to render judgment against the United States for the value of the lands which the United States may have granted or sold belonging to the claimant," and such judgment when found shall be a charge on the treasury of the United States."    The information specifically avers that the prisoner made a money claim against the United States.    The section under which this prosecution was begun (5438) requires that the fraudulent claim shall have been made to some person or officer in the civil, military, or naval service of the United States.    It is, among other things, denied that the court of private land claims comes within this description.    In U. S. v. Moore, 3 MacArthur, 227, Judge MACARTHUR said that a claim presented against the United States in the court of claims was not presented to a person or officer within the meaning of this act; but the other judges did not concur in that opinion and it was pure obiter dictum.    The point arose in U. S. v. Strobach, 48 Fed. Rep. 908, in a prosecution

*Margin note: HABEAS corpus: presentation of fraudulent claim against and conspiracy to defraud United States: court of private land claims: jurisdiction.*

against a deputy marshal for presenting an account for approval to the district court, and Justice WOODS said: "The contention of counsel for defense is that the law only punishes for presentation to a person or officer in the civil service of the United States of a false claim, and, when a false claim is presented for approval to the district court of the United States in which the district judge is presiding, that that is not a presentation thereof to an officer in the civil service of the United States. In other words, that a United States judge in vacation, and when not engaged in the discharge of his usual duties, is an officer in the civil service of the United States, but when engaged in holding the term of court be ceases to be an officer in the service of the United States, and his identity as such is lost, and he is only a court or a member of a court. We think that a United States judge is at all times an officer in the civil service of the United States, within the meaning of the statute, and that, when a claim is presented to a court of which he is the presiding officer, it is presented to an officer in the civil service of the United States." It may be observed that there is no revising power over the action of the court by the treasury officials in relation to witness and jury fees and mileage.

There is, however, in this case, the charge of conspiracy to defraud the government by means of a false, fraudulent, and fictitious claim. This proceeding, by habeas corpus is a collateral attack upon the proceedings upon which the prisoner was committed to jail. In Ex parte Siebold, 100 U. S. 371, Mr. Justice BRADLEY, speaking of the limitations of the jurisdiction of the supreme court on habeas corpus which arise from the nature and objects of the writ, as defined by the common law, lays down the general rule that the only ground on which that court, or any court, without special statute authority, will give relief on habeas

corpus, is where there is want of jurisdiction over the person or the cause, or some other matter rendering the proceedings void, as distinguished from what is merely erroneous and reversible. The writ is not to be employed to take the prisoner away from the court which holds him for fear, if he remains, errors may be committed. Ex parte Crouch, 112 U. S. 178. Nor can it be used to subserve the purposes of the writ of error, and it will not be granted to review the whole case, but only to examine the authority of the tribunal by which the prisoner was committed. Ex parte Virginia, 100 U. S. 339. It has been said that the test of jurisdiction is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong (Otis v. Rio Grande, 1 Woods, 279), unless, indeed, some punishment in inflicted which the tribunal had no authority to impose. The prisoner's counsel conceded at the bar that the commissioner who held the preliminary examination of and committed the prisoner to custody had jurisdiction of the person and the subject-matter; but it has been earnestly and ably contended that the information charged no offense against the prisoner on which he could be imprisoned or deprived of his liberty. This point was considered in Ex parte Siebold, 100 U. S. 371, and the language of Chief Baron GILBERT in Bushell's case, Vaughn, 135, was quoted, that "if the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge." Mr. Justice BRADLEY, commenting, observes: "The latter part of the rule, when applied to conviction and sentence, is confined to cases of clear and manifest want of criminality in the matter charged, such as, in effect, to render the proceedings void." It is true that in Ex parte Siebold there had been a conviction and sentence, but, if the objection be not jurisdictional, neither would

the commitment be open to collateral attack by habeas corpus. In Ex parte Coy, 127 U. S. 731, it was strongly insisted that no offense under the act of congress was set out in the indictment, and that the prisoner should be released on habeas corpus. Mr. Justice Miller says: "It was certainly not intended to say [in Ex parte Wilkins, 5 Pet. 193] that because a federal court tries a prisoner for an ordinary common law offense, as burglary, assault and battery, or larceny, with no averment or proof of any offense against the United States, or any connection with a statute of the United States, and punishes him by imprisonment, that he can not be released on habeas corpus because the court which tried him had assumed jurisdiction. In all such cases, when the question of jurisdiction is raised, the point to be decided is whether the court has jurisdiction of that class of offenses. If the statute has invested the court which tried the prisoner with jurisdiction to punish a well defined class of offenses, as forgery of its bonds, or perjury in its courts, its judgment as to what acts were necessary under those statutes to constitute the crime is not reviewable on a writ of habeas corpus." "We are not here to consider it as on a demurrer before trial, but, finding that the district court had general jurisdiction of this class of offenses, we proceed no further in the inquiries on that subject." And he cites with approval Yarbrough's case, 110 U. S. 651. This seems to be within the rule laid down by Judge Folger in Hunt v. Hunt, 72 N. Y. 229, who defines jurisdiction of the subject-matter to be "the power to adjudge concerning the general question involved." In Ex parte Parks, 93 U. S. 18, it was held that an indictment could not be collaterally attacked, on habeas corpus, which alleged the forgery of a receipt of a register in bankruptcy, though the statute covered the forgery of certain evidenciary documents. See, also, Hauser v. State, 33 Wis. 678, and

Ex parte Harlan, 27 Pac. Rep. 920.  If the prisoner can attack the sufficiency of an information and commitment thereon, like the present, by habeas corpus in this court in advance of his trial in the district court, so may prisoners confined in the jail of every county in the territory attack the sufficiency of indictments against them by habeas corpus in this court, instead of employing a demurrer or motion to quash in the court below.  Under such circumstances, the supreme court of the United States have refused to interfere.  In re Lancaster (1890), 11 Sup. Ct. 117.  We are of the opinion that the commitment was issued in the exercise of the jurisdiction of the subject-matter, and that a sufficient cause is set forth upon which the prisoner should be held.

HAMILTON and LAUGHLIN, JJ., concur.

COLLIER, J. (dissenting).—I am constrained to express my dissent from the conclusion reached by the majority of the court upon this application for a writ of habeas corpus.  Such a writ is so sacred to the law, it is such a great writ that it is to be considered like the palladium of liberty, and no question of courtesy, comity, or propriety should for a moment be entertained when it is applied for to a court having jurisdiction to issue it.  It is the freeman's writ, and any suggestion of its denial to an American citizen illegally restrained of his liberty seems in conflict with the genius of our institutions.  To the argument which proposes hesitation in its issuance because of propriety between courts, or because of propriety for any other reason, in time of peace, an American grown to the stature of these institutions is instinctively opposed.  No man should be considered a criminal of so dark a dye, or should be able to defraud his government or his neighbor in so outrageous a manner, that any court could be induced to inflict injury to the vital principle

that every inhabitant of this broad land shall breathe
the free air of liberty until he is restrained according to
law.    It is one of the chiefest praises of the judiciary
that, no matter how fiercely popular passion may rage,
how red-handed a murderer may be, or how otherwise
extreme any violation of law may be considered, it sits
in calm deliberation to enforce the law and to make an
offender's act become a beacon light in the illumining
of liberty's path, instead of creating a precedent for
the oppression of its followers.    I therefore think that
the argument that this court should withhold this writ,
when our organic act gives jurisdiction to issue it,
because petitioner should have applied to the judge of
the district court, or because his alleged monumental
and historical fraud calls grievously for redress, is un-
worthy of a moment's consideration.

No less opposed to the spirit of our law is the
doctrine that, by implication and inference, reason may
bring within the scope of a criminal statute offenses to
which its letter does not extend.    It has ever been held,
under the common law and in this country, to be a
cardinal principle, in the expounding or criminal
statutes, that they should be read "in favorem vitae et
libertatis," and strictly as against the state.    All con-
struction and intendment are against the government
and in favor of the accused, though not to the extent
of emasculating or destroying a statute.    The statute
under which the accused is charged has a range very
broad and comprehensive, and an utility distinctly
manifest, even though it should be held not to reach
the character of act described in the complaint upon
which petitioner has been arrested and is now detained.
No one will dispute that section 5438 of the United
States Revised Statutes covers the presentation of false
claims against the government for approval and pay-
ment by any officer or person given the authority to
approve or pay the same, when the scienter is properly

laid and proved. The question here is whether or not a suit begun in the court of private land claims, established by act of congress passed March 3, 1891, comes within the purview of said section, where it appears that plaintiff recites in his petition that land within the exterior boundaries of an alleged grant claimed by him has been disposed of by the United States, and he claims the maximum per acre so disposed of. It is conceded by the attorney for the United States that but for said feature of the claim for land there could be no pretense that section 5438, Revised Statutes, would have any application whatever to the case at bar; and this court in its opinion also proceeds upon that theory. It seems to be minimizing substantials and magnifying accidentals to hold that this section, not otherwise applicable, becomes so by the presence of a provisional money feature in the suit. This feature, if it should ever become material in the litigation begun by the petitioner, becomes so because of acts affecting the petitioner in invitum, and done, not by his procurement or consent, and possibly without his knowledge. This pecuniary feature only becomes material after the land sued for has been "decreed." In other words, when plaintiff's exterior boundaries shall have been adjudicated to him, he can obtain patent only to so much, above what the government has the right to pay him for, at $1.25 per acre, as he recovers, so that it, the govverment, may keep faith with those to whom it has already sold and granted some portions of claimant's land. But the principle here involved arises above what, with respect to my associates, I deem a consideration too small for their intelligent attention; and this decision may, I fear, become a precedent for statutory construction harmful in the extreme. There can be no question here of collateral attack, if no offense is charged, and I would wish no other authority than the one cited by the court of Ex parte Siebold,

100 U. S. 371: "A court will give relief on habeas corpus where there is want of jurisdiction over the person or the cause or some other matter rendering the proceedings void." If no offense is charged, is there any "cause?" If there is no offense charged, are not the "proceedings void" as to every step? Also, I would cite the very case the opinion of this court rests on, as refuting the position that section 5438, Revised Statutes, refers to any such class of case as the bringing of a suit either in a constitutional or a legislative court for adjudication, judgment, or decree. U. S. v. Strobach, 48 Fed. Rep. 903. The compiler of that volume states the full force and effect of that case in the fifth syllabus as follows: "Although the act of a federal judge in passing upon the accounts of a United States marshal in open court, as required by act congress February 22, 1875, is, in a sense, the act of the court, yet, as his decision is subject to revision by the accounting officers of the treasury, it is only quasi judicial, and therefore a presentation to him is a presentation to an officer in the civil service of the United States, within the meaning of section 5438." It is "sticking in the bark"—with due respect I say it—to draw any other conclusion from that decision, and, indeed, the whole argument of the learned justice is an effort to avoid a result on demurrer which would have overturned the indictment, by showing that "open court" meant, in the statute there construed, a court in quasi judicial matters only. No one can, I venture to say, carefully read that decision, without arriving at the conclusion that Judge Woods believed that in matters judicially determined section 5438 has no application whatever. It shocks our understanding to say that one of the three coordinate branches of this government—a court created, not for the approval of claims, but to adjudicate them, and, when adjudicated, to enforce them—is "a person or officer in the civil

service" of the government. The court is itself civil service, and those who are in its service are officers and persons in the civil service; that is, in its service. This opinion being prepared on the day the majority opinion was submitted to me, then to be handed down, I am not given opportunity for more elaborate discussion of a decision which, I think, makes the most damaging precedent yet emanating from this court.

I am authorized to say that the chief justice concurs in this dissent; but the views above expressed have not been submitted to him.